**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically on July 20, 2017, which may be different from its entry on the record.**

**IT IS SO ORDERED.**

**Dated: July 20, 2017**



ARTHUR I. HARRIS
UNITED STATES BANKRUPTCY JUDGE

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO

In re:                              )       Case No.  16-16613
                                    )
LATONYA McDUFFIE,                   )       Chapter 7
                                    )
        Debtor.                     )       Judge Arthur I. Harris

MEMORANDUM OF OPINION[1]

In this Chapter 7 case, the debtor seeks damages after a creditor sold the contents of the debtor's leased storage unit in an online sale shortly after the debtor filed for bankruptcy.  For the reasons that follow, the Court finds that the debtor has failed to establish by a preponderance of the evidence the elements of a willful violation of the automatic stay under 11 U.S.C. § 362(k).

---

[1] This opinion is not intended for official publication.

## JURISDICTION

This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O). The Court has jurisdiction over core proceedings under 28 U.S.C. §§ 1334 and 157(a) and Local General Order 2012-7 of the United States District Court for the Northern District of Ohio.

## PROCEDURAL HISTORY

On December 2, 2016, the debtor, Latonya McDuffie, filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. On February 26, 2017, the debtor filed a Motion for Sanctions for Violation of the Automatic Stay (Docket No. 10) alleging that Ohio Storage Euclid, LLC, dba Euclid Self Storage ("Euclid Self Storage") willfully violated the automatic stay by selling the debtor's property stored at its facility. Euclid Self Storage did not respond to the motion, nor did anyone representing it attend the hearing scheduled for March 21, 2017. At the hearing, the Court asked the debtor to file a declaration documenting the amount of her damages, which the debtor filed on March 30, 2017. (Docket No. 14). On March 31, 2017, Attorney Jeffrey Levinson filed a notice of appearance on behalf of Euclid Self Storage. (Docket No. 15). On April 2, 2017, Euclid Self Storage filed an objection to the debtor's declaration. (Docket No. 16). In its objection, Euclid Self Storage conceded that it sold the

2

debtor's belongings on December 6, 2017, but claimed that it sent prior notice to the debtor of the date of the sale and did not receive notice of the debtor's pending bankruptcy case until December 8, 2016. (Docket No. 16).

On June 8, 2017, the Court held an evidentiary hearing on the debtor's motion for sanctions. The Court heard testimony from the debtor and from Gary Holzheimer, Euclid Self Storage's site manager. The Court admitted without objection the debtor's Exhibits 1 through 5 and Euclid Self Storage's Exhibits A through K. The parties also filed stipulations. (Docket No. 22). On June 19, 2017, Euclid Self Storage responded to the fee application that debtor's attorney filed on June 7, 2017. (Docket No. 27). On June 26, 2017, the debtor's attorney filed an amended fee application to include time spent on the date of the evidentiary hearing. (Docket No. 28).

## STIPULATIONS

The parties submitted the following stipulations. For clarity, the Court will refer to Euclid Self Storage by its dba in the stipulations.

1. LaTonya McDuffie (the "Debtor"), the debtor, filed a Petition under Chapter 7 of the Bankruptcy Code, on Friday, December 2, 2016 (the "Petition Date").

2. As of the Petition Date the debtor had certain property (the "Contents") stored in a locker with Ohio Storage Euclid LLC, dba Euclid Self Storage ("Euclid Self Storage") pursuant to a contract (the "Contract").

3

3. As of the Petition Date the Debtor was more than 45 days delinquent in the required payments due to Euclid Self Storage under the Contract.

4. By an online auction sale, which closed on December 6, 2016, Euclid Self Storage sold the Contents to a winning bidder for an auction sale price of $10.00 (the "Sale").

5. On December 8, 2016, the Court mailed to Euclid Self Storage at 1381 East 276th Street, Euclid, Ohio 44132-3027 notice of the 341 meeting of creditors in the Debtor's bankruptcy case (Docket No. 7).

6. After the Debtor filed her bankruptcy and after the conclusion of the Sale, Euclid Self Storage and or its statutory agents received from Debtor's attorney, the following letters informing Euclid Self Storage of Debtor's bankruptcy, their violation of the stay, and a request to either return Debtor's property or its value.
   a. A letter dated January 5, 2017 represented as Exhibit 1
   b. A letter dated January 19, 2017 represented as Exhibit 2
   c. A letter dated January 27, 2017 represented as Exhibit 3
   d. A letter dated February 15, 2017 represented as Exhibit 4

7. On February 3, 2017, Euclid Self Storage, through an email (Debtor Exhibit 5) sent to debtor's counsel admitted they sold the contents of the Debtor's storage locker postpetition and stating that Euclid Self Storage would not reimburse the Debtor.

8. As of today, Euclid Self Storage has not returned debtor's property or their value, although Euclid Self Storage has offered to pay the Debtor ten times the value of the Contents as determined though the Sale, and the Debtor has refused that offer.

9. On May 8, 2017, through counsel Euclid Self Storage made a formal request to Debtor for the following:
   a. All documents evidencing the Debtor's efforts to notice Euclid Self Storage of her bankruptcy filing whether prior to December 6 or otherwise, including any notes of telephone conversations had, individuals she spoke with and the date(s) of those conversations. *Debtor responded stating she has no such documents.*

4

b. Copies of the Debtor's telephone records evidencing her calls to Euclid Self Storage. *Debtor responded stating she has no such documents.*
c. Any list of the Contents of the unit. *Debtor did not respond to this request at all.*
d. All documents relative to the value of the unit Contents. *Debtor responded stating she has no such documents.*
e. All documents relative to the fees incurred by the Debtor relative to this issue, including fee statements, engagement letters and fee agreements. *Debtor only provided a redacted initial fee agreement.*
f. All document evidencing the Debtor's payment of those fees. *Debtor responded she has paid not fees incurred to remedy a stay violation.*

(Docket No. 22).

## FINDINGS OF FACT

The findings of fact contained in this memorandum of opinion reflect the Court's weighing of the evidence, including the credibility of the witnesses. In doing so, "the court considered the witnesses' demeanor, the substance of the testimony, and the context in which the statements were made, recognizing that a transcript does not convey tone, attitude, body language, or nuance of expression." *In re Parrish*, 326 B.R. 708, 711 (Bankr. N.D. Ohio 2005). Even if not specifically mentioned in this decision, the Court considered the testimony of all the trial witnesses, exhibits admitted into evidence, and any stipulations. Unless indicated otherwise, the following facts were established at trial by a preponderance of the evidence or were stipulated to by the parties. None of these findings of fact is intended to contradict the parties' stipulations; however, some

5

of the findings of fact may provide more detail than was included in a particular stipulation.

Several years ago, the debtor entered into a written contract with Euclid Self Storage to lease a unit at its storage facility. The contract provided that if the occupant of a storage unit were to default on his or her payments, Euclid Self Storage would have a lien on the items in the unit for payment of rent and fees due. (Euclid Self Storage Exhibit A). The contract also outlined the procedure for late payments and eventual sale of the contents of the storage unit in the case of nonpayment. *Id.*

When an occupant fell behind on payments, Euclid Self Storage placed an overlock on the unit to prevent the occupant from accessing his or her property without paying rent. The common practice at Euclid Self Storage was to send a letter to the occupant of the storage unit if rent and late fees were not paid within 45 days of the due date. The letter would notify the occupant that he or she was past due on the rent, and that if the rent and fees were not paid, his or her belongings within the storage locker would be sold on a specified date.

The site manager at Euclid Self Storage, Gary Holzheimer, testified that on October 24, 2016, he sent a letter to the debtor at her present address that included a sale date for the contents of the storage unit. (Euclid Self Storage Exhibit B).

6

The site manager testified credibly that the letter specified a sale date of December 6, 2016. The debtor was not able to bring her rent payments current, so at the time of the bankruptcy, Euclid Self Storage still had possession of the debtor's belongings as a part of the lien it held against the debtor's property in the leased storage unit.

The debtor filed for bankruptcy at approximately noon on Friday, December 2, 2016. The debtor testified that she called Euclid Self Storage on December 5, 2016, the day before the sale was to take place, but admitted that she did not mention her bankruptcy proceedings. This conflicts with the debtor's declarations under penalty of perjury, wherein the debtor states that on December 5, 2016, she "left a voicemail notifying [Euclid Self Storage that she] had filed bankruptcy." (Euclid Self Storage Exhibit F). However, the Court finds that the debtor's testimony at trial is more credible. Her trial testimony is also consistent with the site manager's testimony that Euclid Self Storage received no phone messages from the debtor or other notice of her bankruptcy filing prior to the sale date of December 6, 2016. The site manager testified credibly that when the storage facility received notice of a bankruptcy, he was to stop all collection proceedings against the occupant, including the sale of any property located in the occupant's storage unit.

On Tuesday, December 6, 2016, at 11:00 A.M., Euclid Self Storage sold the debtor's personal property within her storage unit in an online auction. At the time of the sale, Euclid Self Storage did not have any notice of the debtor's bankruptcy case. The terms of the sale provided for the winning bidder to pick up the items from the storage unit within 72 hours. (Euclid Self Storage Exhibit D). Euclid Self Storage retained the right to cancel the sale at any point, up until the time that the winning bidder picked up the items it had purchased. *Id*. If the buyer did not pick up the belongings until the last possible date, Euclid Self Storage would have until December 9, 2016, at 11:00 A.M. to cancel the sale. However, the site manager testified that winners of the online auctions generally pick up their belongings the same day or the next day. The site manager stated that the winner of this auction, Jon McFadden, was a regular bidder who generally came the same day or the next day to pick up the items he had purchased at auction. Under the presumption of regularity, the Court finds that it is more likely than not that the purchaser picked up the items from the debtor's storage unit and the sale was completed before December 8, 2016.

Two days after the online auction, on December 8, 2016, the debtor's attorney called Euclid Self Storage and informed it of the debtor's bankruptcy. (Docket No. 26). Based on the contemporaneous billing records of the debtor's

8

attorney, the debtor's admission that she never mentioned the bankruptcy during her December 5, 2016, phone call, and the site manager's testimony regarding established procedures for handling phone messages, online sales, and bankruptcy filings, the Court finds that Euclid Self Storage did not receive notice of the debtor's bankruptcy until after the sale was completed and after the winning bidder had removed the contents of the storage unit.

The proceeds from the sale of the debtor's property within the storage unit were $10. (Euclid Self Storage Exhibit D). At the time of the bankruptcy petition, the debtor claimed that she owed $151 in rent and fees to Euclid Self Storage, as well as an additional unknown amount. (Euclid Self Storage Exhibit I). The site manager credibly testified that the debtor owed approximately $700 at the time the contents of the storage unit were sold. The debtor had stored personal belongings including miscellaneous clothing and personal papers. (Euclid Self Storage Exhibit K). On her Schedule A/B, the debtor valued all of her clothes at $500 and all of her household goods at $2,000. (Euclid Self Storage Exhibit G). However, only some of her clothes and household goods were stored at Euclid Self Storage. There were clothes and household goods in the debtor's other storage unit, as well as at the debtor's apartment. (Euclid Self Storage Exhibit K). The debtor did not identify any particular items with significant monetary value within her storage

9

unit, although the Court recognizes that there may be sentimental value in some of the debtor's property that was being stored at Euclid Self Storage.

The debtor claimed a higher value on the property that was sold at auction than she asserted in her bankruptcy schedules. As evidenced by the debtor's attorney's letters from January 5, 2017, to February 15, 2017, to Euclid Self Storage, the debtor valued her property within her storage unit at $4,000 and requested that Euclid Self Storage reimburse her in that amount. (Debtor Exhibit 1-4).

Prior to the trial, the Court advised the debtor that, based on the principle of judicial estoppel, the Court would limit the value of the contents of the items sold to no more than the value that the debtor had indicated in her schedules filed with the Court under penalty of perjury, which was a maximum of $2,500. Although the items sold at auction for just $10, bidders were only shown a few photographs of the interior of the storage unit and were not permitted to physically inspect the items in the storage unit.

The Court believes that, using the valuation for personal consumer items under section 506(a) of the Bankruptcy Code, the value of the debtor's goods sold at auction was approximately $100. For example, had the debtor filed a motion to redeem the personal property subject to the statutory lien for items in storage units

10

under Section 5322.02 of the Ohio Revised Code, the Court believes that the debtor could have redeemed the property under section 722 of the Bankruptcy Code for $100.

## DISCUSSION

The Court may impose damages for violations of the automatic stay under 11 U.S.C. § 362. The filing of a bankruptcy petition gives rise to the automatic stay of "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate . . . [or] to collect, assess, or recover a claim against the debtor that arose before the commencement of the case." 11 U.S.C. § 362(a)(3) and (6). Subsection 362(k)(1) (formerly subsection 362(h) prior to the 2005 bankruptcy amendments) provides that, ". . . an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."

A creditor willfully violates the stay if the creditor knows of the stay and violates the stay with an intentional act. *See In re Sharon,* 234 B.R. 676, 687-88 (B.A.P. 6th Cir. 1999) (upholding a bankruptcy court's imposition of damages against a creditor that refused to return a repossessed car postpetition). *See also In re Grine*, 439 B.R. 461, 466 (Bankr. N.D. Ohio 2010). "A 'willful violation'

11

does not require proof of a specific intent to violate the stay, but rather 'an intentional violation by a party aware of the bankruptcy filing.' " *In re Baer*, No. 10-21096, 2011 WL 3667511, at *4 (Bankr. E.D. Ky. Aug. 22, 2011) (quoting *In re Sharon*, 234 B.R. at 687).

Under 11 U.S.C. § 362(k)(1), the individual seeking damages has the burden of establishing three elements by a preponderance of the evidence: (1) the actions taken were in violation of the automatic stay; (2) the violation was willful; and (3) the violation caused actual damages. *See In re Collett*, Nos. 13-8033, 12-61190, 2014 WL 2111309, at *4 (B.A.P. 6th Cir. May 21, 2014) (slip copy) (citations omitted). *See also In re Swartzentruber*, No. 13-61147, 2014 WL 2930450, at *1 (Bankr. N.D. Ohio June 27, 2014); *In re Pawlowicz,* 337 B.R. 640 (Bankr. N.D. Ohio 2005).

The Court must decide: (1) whether the creditor's actions constitute a violation of section 362; (2) if the creditor has violated section 362, whether such violation was "willful"; and (3) whether the debtor is entitled to damages, including attorney's fees.

*EUCLID SELF STORAGE VIOLATED THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 BY SELLING THE DEBTOR'S BELONGINGS IN THE STORAGE FACILITY AFTER THE BANKRUPTCY CASE WAS FILED*

The Court's first inquiry is whether the creditor's actions violated the

12

automatic stay. The debtor asserts that Euclid Self Storage violated the automatic stay by selling her belongings that were stored in its facility after the debtor filed for bankruptcy.

The debtor filed for bankruptcy on December 2, 2016. The automatic stay came into effect as soon as the bankruptcy case was filed. Euclid Self Storage sold the debtor's belongings on December 6, 2016, without first obtaining relief from stay from the bankruptcy court. Therefore, the Court finds that Euclid Self Storage violated the automatic stay by selling the debtor's property stored in its facility.

*EUCLID SELF STORAGE'S VIOLATION OF THE STAY WAS NOT "WILLFUL"*

"A violation of the automatic stay can be willful when the creditor knew of the stay and violated the stay by an intentional act." *In re Sharon,* 234 B.R. at 688. "As used in [current subsection 362(k)], 'willful,' unlike many other contexts, does not require any specific intent." *In re Bivens*, 324 B.R. 39, 42 (Bankr. N.D. Ohio 2004). *See Sharon*, 234 B.R. at 687-88 (creditor's belief that its action would not violate stay does not preclude a finding that creditor's action was "willful" within the meaning of section 362(k)). *See also Johnston Envtl. Corp. v. Knight (In re Goodman)*, 991 F.2d 613, 618 (9th Cir. 1993); *Lansdale Family Rests., Inc. v. Weis Food Serv. (In re Lansdale Family Rests., Inc.),*

13

977 F.2d 826, 829 (3d Cir. 1992). The debtor bears the burden of establishing by a preponderance of the evidence that the violation of the automatic stay was willful. *See In re Johnson,* 501 F.3d 1163, 1172 (10th Cir. 2007).

When Euclid Self Storage took action against the debtor by selling the contents of the storage unit, Euclid Self Storage had no knowledge of the pending bankruptcy. The debtor has failed to establish by a preponderance of the evidence that Euclid Self Storage had any knowledge of the debtor's bankruptcy case until December 8, 2016. While Euclid Self Storage violated the stay by intentionally selling the debtor's property, its action was not willful, because it had no knowledge of the debtor's bankruptcy case until after the contents of the storage unit had been sold at auction and removed by the winning bidder.

Accordingly, unless Euclid Self Storage took actions in violation of the automatic stay after December 8, 2016, for example, by attempting to collect the balance due from the debtor or by failing to restore the debtor to the status quo as of the petition date (to the extent that such a requirement exists), its violation of the automatic stay was not willful, and the debtor is entitled to no relief under 11 U.S.C. § 362(k).

The debtor has failed to establish that Euclid Self Storage sought to collect a deficiency judgment or take further action against the debtor after the sale of the

14

contents of the storage unit.  Nevertheless, the debtor asserts that Euclid Self

Storage should have either retrieved the items from the winning bidder or

compensated the debtor for the value of the property sold.  While the Court

sympathizes with the debtor and the loss of her personal property, the Court does

not believe that the Bankruptcy Code or pertinent case law requires Euclid Self

Storage to compensate the debtor under the specific circumstances presented here.

In the present case, the debtor's property was sold to a third party before

either Euclid Self Storage or the third party had notice or knowledge of the

debtor's bankruptcy case.  Under 11 U.S.C. § 542(c):

> An entity that has neither actual notice nor actual knowledge of the
> commencement of the case . . . may transfer property of the estate . . .
> in good faith . . .  to an entity other than the trustee, with the same
> effect as to the entity making such transfer or payment as if the case
> under this title concerning the debtor had not been commenced.

*See also In re TLB Equipment, LLC*, 479 B.R. 464, 479 (Bankr. S.D. Ohio 2012)

("an entity . . . that has neither notice nor knowledge of the commencement of a

debtor's case at the time of the stay violation cannot be held liable for damages").

In *TLB Equipment*, the bankruptcy court held that a creditor who repossessed the

debtor's equipment prepetition, and then sold the equipment postpetition without

knowledge of the bankruptcy is not liable for damages for violation of the

automatic stay.  *Id*. at 480.  In denying the debtor's claim for damages, the

15

bankruptcy court relied on 11 U.S.C. § 342(g)(2), which provides:

> A monetary penalty may not be imposed on a creditor for a violation of a stay in effect under section 362(a) (including a monetary penalty imposed under section 362(k)) or for failure to comply with section 542 or 543 unless the conduct that is the basis of such violation or of such failure occurs after such creditor receives notice effective under this section of the order for relief.

479 B.R. at 479-80.

While there is case law in this circuit that once a creditor learns that a bankruptcy petition has been filed, the creditor has an affirmative duty to return the property to the debtor and restore the status quo, *see, e.g.*, *In re Sharon*, 234 B.R. 676 (B.A.P. 6th Cir. 1999); *In re Horace*, 2015 WL 5145576 at *4 (Bankr. N.D. Ohio Aug. 28, 2015); *Dawson v. J & B Detail, LLC* (*In re Dawson*), Adv. No. 05-1463, 2006 WL 2372821 at *8 (Bankr. N.D. Ohio July 28, 2006); in none of those cases was the sale of property completed before the creditor had knowledge of the debtor's bankruptcy case. Furthermore, restoring the status quo in the present case would not mean giving the debtor the value of the property sold. Rather, restoring the status quo would mean giving the debtor the right to redeem the personal property that was sold in violation of automatic stay.

When the debtor filed for bankruptcy on December 2, 2016, the debtor's property in the storage unit was being held by Euclid Self Storage and was subject

16

to a statutory lien under Ohio Revised Code Section 5322.02(A). Had the debtor immediately notified Euclid Self Storage of her bankruptcy filing, Euclid Self Storage could presumably have stopped the online sale and maintained its lien on the debtor's property through possession. However, Euclid Self Storage would be prohibited from selling the property at auction without first obtaining relief from stay. Unlike a lender with a lien on a vehicle, whose lien remains in effect even after a repossessed vehicle is returned to the owner, Euclid Self Storage would lose its lien if the debtor were permitted to remove her possessions from the storage unit.

In the present case, what the debtor presumably lost was the right to redeem her property by paying the amount of the allowed secured claim under section 722 of the Bankruptcy Code. Although the debtor did not raise this argument, the debtor may also have been able to move to avoid the lien on her property as a preference pursuant to section 522(h).

For purposes of redeeming the debtor's clothing and household goods, the value of the property securing the claim is "determined based on the replacement value of such property as of the date of the filing of the petition." 11 U.S.C. § 506(a)(2). The replacement value of personal property is equivalent to the "price a retail merchant would charge for property of that kind considering

17

the age and condition of the property at the time value is determined." *Id*. This analysis begins with the values of $500 provided in the debtor's Schedule A/B for clothing and $2,000 for household goods. The Court would then need to estimate what such used clothing and household goods could sell for at a second-hand store. In addition, the Court must take into account that the clothing and household goods were divided across three different locations – the debtor's apartment and the two storage facilities. Although the debtor's statement of financial affairs only identified clothing and personal papers as being stored at Euclid Self Storage (Euclid Self Storage Exhibit K), the Court believes that the description is sufficient to cover at least some household goods, such as an old, non-HD television set and a small artificial Christmas tree. In accordance with section 506(a)(2), the Court estimates the value of the debtor's goods sold at auction to be $100.

This $100 value does not mean that Euclid Self Storage must pay $100 to compensate the debtor for the goods sold at auction. Rather, it means that the debtor lost the opportunity to pay $100 to Euclid Self Storage to redeem the $100 in property that Euclid Self Storage held as security for the approximately $700 that the debtor owed Euclid Self Storage. One of the reasons why this case is different from *In re Smith*, 876 F.2d 524 (6th Cir. 1989), is that the chapter 13

18

debtor in *Smith* offered the creditor a $3,000 replacement lien for the value of the vehicle that was sold in violation of the automatic stay.

In *Smith*, the creditor could not return the vehicle that had been sold without knowledge of the bankruptcy, and the debtor needed substitute transportation to get to work for her chapter 13 plan to succeed. The debtor offered the creditor a replacement lien, in exchange for the creditor giving the debtor the $3,000 in proceeds from the sale to purchase another car.

Unfortunately, the situation in *Smith* simply has no application to the present case. In *Smith*, the debtor could use the replacement car without the creditor losing its replacement lien. In the present case, Euclid Self Storage's lien would vanish if the debtor were to remove her property from the storage unit. Unsurprisingly, the debtor in the present case has not offered Euclid Self Storage a $10 replacement lien in exchange for Euclid Self Storage giving the debtor the $10 in proceeds from the online auction to purchase other goods. Such a replacement lien would only be valid if the debtor were required to keep the $10 in replacement goods at the storage unit as security for the approximately $700 that the debtor owes Euclid Self Storage.

Nor does the Court read *Smith* as requiring that Euclid Self Storage pay the debtor the value of her property, which was sold in violation of the automatic stay

19

but without knowledge of the debtor's bankruptcy case. Such a result would do more than restore the debtor to the position she was in when she filed for bankruptcy on December 2, 2016.

A bankruptcy court decision from the Middle District of Florida is instructive. In *In re Rivers*, 160 B.R. 391, 394 (Bankr. M.D.Fla. 1993), the bankruptcy court awarded damages when a moving and storage company sold the debtor's belongings despite receiving notice of the debtor's bankruptcy filing. The bankruptcy court, however, did not award the debtor the full value of the goods sold, but instead deducted the unpaid storage fees not covered by the sale of the debtor's property. 160 B.R. at 394.

In the present case, whether the debtor's property at Euclid Self Storage was valued at $100, $10, or $2,000, as of December 2, 2016, it was held by Euclid Self Storage pursuant to a statutory lien to secure a prepetition debt of approximately $700. That statutory lien would be lost if the debtor were permitted to remove the property from the storage unit. Moreover, the *Smith* decision did not rely on what is now section 362(k) and predates the language in section 342(g)(2) added to the Bankruptcy Code in 2005.

Accordingly, the Court holds that there was no willful violation of the automatic stay because (1) Euclid Self Storage had no knowledge of the debtor's

20

bankruptcy case until after the contents of the storage unit had been sold at auction

and removed by the winning bidder, (2) Euclid Self Storage took no further

collection action against the debtor after December 8, 2016, and (3) under the

circumstances of this case, there was no status quo to restore.

*EVEN IF THERE IS A DUTY TO RESTORE THE STATUS QUO, THE DEBTOR*
*IS NOT ENTITLED TO DAMAGES FOR*
*EUCLID SELF STORAGE'S VIOLATION OF THE AUTOMATIC STAY*

An award of actual damages is mandatory if the stay violation is willful.

*In re Bivens*, 324 B.R. at 42; *In re Johnson,* 253 B.R. 857, 861

(Bankr. S.D. Ohio 2000). *See United States v. Harchar*, 331 B.R. 720

(N.D. Ohio 2005) (costs and attorney's fees are regularly awarded as actual

damages for violation of the stay); *In re Sharon*, 234 B.R. at 687-88 (upholding a

bankruptcy court's imposition of damages against a creditor for violation of the

automatic stay).

Under § 362(k), damages must be proven with reasonable certainty and

cannot be based on conjecture or speculation. *See Archer v. Macomb County*

*Bank (In re Archer)*, 853 F.2d 497, 499-500 (6th Cir. 1988). As the party seeking

damages, the debtor has the burden of proving entitlement to damages.

*In re Sharon*, 234 B.R. at 687.

As discussed above, the stay violation by Euclid Self Storage was not

willful.  Since the stay violation was not willful, the debtor is not entitled to

damages under 11 U.S.C. § 362(k).  Nevertheless, and as explained more fully

below, the Court would still hold that the debtor is not entitled to damages, even if

Euclid Self Storage acted willfully by failing to restore the status quo after being

informed of the debtor's bankruptcy.

A creditor is not under a duty to return the debtor to a better position than

the debtor was in at the time of filing for relief.  As explained earlier, to require

Euclid Self Storage to pay damages for the value of goods sold without knowledge

or notice of the bankruptcy case would presumably run afoul of the language in

section 342(g)(2) added by BAPCPA.  *See In re TLB Equipment, LLC*,

479 B.R. at 479-80.

To require Euclid Self Storage to pay damages for actions it was powerless

to avoid because of lack of notice would also raise constitutional due process

concerns.  "A debt is the creditor's property, and the Due Process Clause entitles

[the creditor] to service of notice 'reasonably calculated' to reach [the creditor]

before [the creditor] is deprived of that property."  *Lampe v. Kash*,

735 F.3d 942, 943 (6th Cir. 2013) (citing *Mullane v. Cent. Hanover Bank & Trust

Co.*, 339 U.S. 306, 314 (1950)).  While it is true that the automatic stay is

described as self-executing, notice remains a constitutional concern.  When a

22

creditor is powerless to avoid a stay violation because of lack of notice, and the cost of restoring the status quo or compensating the debtor is significant, interpreting section 362(k) to require such compensation could run afoul of the Due Process Clause. That is why a debtor is required to file a list of creditors with the petition and the clerk or its agent is required to notify creditors of the order for relief. *See* 11 U.S.C. §§ 342(a) and 521(a)(1)(A); Fed. R. Bankr. P. 1007(a)(1) and 2002(f)(1) and (o).

In this case, only the debtor or the debtor's attorney was in a position to provide the prompt notice needed to give Euclid Self Storage an opportunity to cancel the online sale. And while it is certainly possible that the debtor notified Euclid Self Storage of her bankruptcy case before the online sale, the Court has already found that the debtor has failed to demonstrate this fact by a preponderance of the evidence.

Therefore, the debtor is not entitled to damages for the sale in violation of the bankruptcy stay. There were no damages proven for actions taken or not taken after the property in the storage unit was sold. Since the Court has found that the debtor has failed to establish any damages from any willful violation of the automatic stay, the Court also declines to award any attorney's fees for work in pursuit of such damages. All of the attorney's work was spent after the property

23

was sold and nothing more could be done by Euclid Self Storage to reverse the sale or get the debtor's property back from the good faith purchaser of the contents of the storage unit. Without a willful violation of the stay, the debtor's attorney is not entitled to compensation under section 362(k).

In short, the Court finds that the debtor has failed to establish any damages from any willful violation of the automatic stay under section 362(k) of the Bankruptcy Code. While the debtor undeniably lost the property that was sold in the online auction, the Court concludes: (1) that this loss was not the result of a willful violation of the automatic stay; (2) that awarding the debtor the value of the property sold would do more than restore the debtor to the status quo; and (3) that interpreting section 362(k) as requiring a creditor to pay damages when the creditor is powerless to avoid an automatic stay violation because of lack of notice would contravene section 342(g)(2) of the Bankruptcy Code and potentially run afoul of the Constitution's Due Process clause.

## BEST PRACTICES

Finally, the Court makes this additional observation, which might fall under the category of "best practices," should any debtor's attorney be faced with a similar situation in the future. In a situation like the present case, when a debtor is in imminent danger of losing property due to ongoing collection efforts, it is

24

incumbent on the debtor's attorney to take the initiative in promptly notifying the affected creditor of the debtor's bankruptcy filing. Had the debtor's attorney promptly sent a fax, sent a text message, made a phone call, or made a quick visit to Euclid Self Storage on the same day that the bankruptcy was filed, and notified it of the debtor's bankruptcy case number and date of filing, the debtor's property would likely never have been sold at auction in violation of the automatic stay. Had the debtor or her attorney notified Euclid Self Storage and stopped the sale, the debtor could have moved to redeem her property from the storage unit or possibly moved under 11 U.S.C. § 522(h) to avoid the lien on the property. Alternatively, if Euclid Self Storage went through with the sale after receiving such notice, the debtor would have had compelling evidence of willfulness. *Cf. In re Rivers*, 160 B.R. at 392 (immediately after filing petition, debtor's attorney sent facsimile of petition and letter explaining automatic stay to moving and storage company and also spoke by phone with an employee).

A bankruptcy filing is a stressful and emotional event for an individual debtor. Part of why a debtor pays for a skilled bankruptcy professional is so that the attorney can handle the critical task of notifying creditors who are likely to take imminent action against the debtor or the debtor's property before receiving formal notice of the bankruptcy filing from the court. As this case unfortunately

demonstrates, a debtor may be too embarrassed or simply not sufficiently steeped in the legal formalities to tell the creditor on her own that a bankruptcy case has been filed.  In making this observation, however, the Court hastens to say that this observation played no part in the Court's analysis of the debtor's claim for damages, including attorney's fees, under section 362(k).

CONCLUSION

For the reasons stated above, the Court denies the debtor's motion for sanctions for violation of the automatic stay.

IT IS SO ORDERED.

26